UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **EQUINE PODIATRY SOLUTIONS, LLC,**<br>    Plaintiff,<br><br>V.<br><br>**BLOOD-HORSE, LLC,**<br>    Defendant. | CIVIL ACTION NO. 5:23-cv-00080-KKC<br><br><br><u>**OPINION & ORDER**</u> |

*** *** ***

This matter is before the Court on a motion to dismiss filed by defendant Blood-Horse, LLC. (DE 7.) Plaintiff, Equine Podiatry Solutions, LLC, seeks damages for alleged trade libel and defamation against it by the defendant. Defendant argues that the claims in plaintiff's complaint should be dismissed for failure to state a cause of action. For the reasons stated herein, the motion to dismiss (DE 7) is **GRANTED**, and this matter is **DISMISSED**.

### I.   BACKGROUND

Plaintiff Equine Podiatry Solutions ("EPS") is an LLC organized for the purpose of developing chemical formulas used for the treatment of laminitis in horses. (DE 1, p. 3.) Laminitis is a disease that causes inflammation within horse hooves which causes horses to become lame. *Id.* The formula that EPS ultimately created is called "Desmosphyrine." *Id.*

On May 16, 2022, the Food and Drug Administration (the "FDA") issued a warning letter to EPS. (FDA Warning Letter, DE 1-2.) The letter, which was posted on the FDA website, stated that it concerned EPS's marketing of Desmosphyrine on its website and social media pages. *Id.* According to the letter, the claims that EPS made on its website and social media about Desmosphyrine – namely, that it was a laminitis treatment – established that it was a drug under

1

section 201(g)(1)(B) of the Federal Food, Drug, and Cosmetic Act ("FD&C Act"), which regulates products "intended for the use in the diagnosis, cure, mitigation, *treatment*, or prevention of disease in animals." *Id.* (emphasis added). Since it fell under the Act and was unapproved by the FDA, its introduction into interstate commerce violated the FD&C Act. *Id.* The letter cited numerous examples from EPS's website and social media where EPS had described Desmosphyrine as a treatment. *Id.* The FDA advised EPS to "investigate[] and determine[] the cause of any violations," and stated that the letter was to notify EPS of the FDA's concerns and provide an opportunity to address them. *Id.*

Blood-Horse, LLC ("BloodHorse") is a news organization that covers events and issues in the equine industry through its print publication, BloodHorse Magazine, its website, [bloodhorse.com](bloodhorse.com), and its electronic publication, *BloodHorse Daily*. (DE 7-1, p. 5.) On June 15, 2022, BloodHorse published an article on its website that discusses the FDA's warning letter to EPS. (BloodHorse Article, DE 1-3.) The one-page article is titled "FDA Warns Company Over Laminitis Treatment Claims," and mostly contains direct quotations from the FDA's warning letter to EPS. *Id.*

EPS alleges that the BloodHorse article contains false and defamatory statements. (DE 1.) The company claims that because of BloodHorse's article, EPS lost a multi-million dollar contract with Patterson Veterinary Supply, Inc., a large supplier of equine-related products. *Id.* The EPS brought two counts against BloodHorse: (1) trade libel, and (2) defamation. *Id.* BloodHorse filed a motion to dismiss on both counts and argues that the article does nothing more than accurately summarize the contents of the FDA warning letter. (DE 7-1.)

## II. DISCUSSION

2

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Defendants contend that all claims filed by EPS do not state a cause of action and therefore should be dismissed. Plaintiff brings forth two causes of action: trade libel and defamation. To prove trade libel under Kentucky law, a plaintiff must show that the defendant "published a false statement that disparages the quality of the plaintiff's land, chattels, or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010) (internal quotations marks and citations omitted). To prove defamation, the plaintiff must plead facts that establish (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence by the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 281-82 (Ky. 2014) (internal quotation marks and citations omitted). As to both claims, BloodHorse argues that they

3

do not stand because the article contains no false statements. Since the falsity of the article is a threshold element for both claims, the Court will analyze whether the article contains false statements.

The complaint alleges that the following excerpts from the BloodHorse article are false:

1. The title: "FDA Warns Company Over Laminitis Treatment Claims."

2. "The United States Food and Drug Administration has asked Equine Podiatry to change language on one of its websites and in social media that suggests desmosphyrine is an FDA-approved drug for the treatment of laminitis."

3. "The letter went on to cite a number of examples where the FDA had concerns about the portrayal of desmosphyrine as an FDA-approved drug."

(DE 1, pp. 15, 17.) EPS attached the FDA warning letter (DE 1-2) and the BloodHorse article (DE 1-3) to its complaint. (DE 1.) In resolving the matter, the Court will consider these attached exhibits. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

The truth of the matter asserted is a defense in any defamation action. *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011). Where the defendant is a newspaper, it is not to be held to the exact facts or to the most minute details of the transactions that it reports. *Bell v. Courier-J. & Louisville Times Co.*, 402 S.W.2d 84, 87 (Ky. 1966). The law requires that the publication be substantially true. *Id.* "Words are to be taken, neither in the milder, nor in the more grievous sense, but in that sense in which they would be understood by those who heard them; the judge ought not to torture them into a charge of guilt, nor explain them into innocence, contrary to their obvious import." *Plummer v. Com. Trib. Pub. Co.*, 208 Ky. 210, 215 (Ky. 1925).

The first statement, the title, does not contain any falsities. It simply states that the FDA warned EPS about its laminitis treatment claims. This did in fact happen; the FDA issued a

4

warning letter to the EPS addressing the claims it made about its laminitis treatment, Desmosphyrine. EPS argues that the BloodHorse title is misleading and calls into question the efficacy of Desmosphyrine in contrast to the FDA warning letter that was limited to the marketing language. (DE 11, pp. 10-12.) To get there, EPS argues that the placement of the adjective "treatment" in front of the noun "claims" means that the FDA issued a warning about the "treatment claims" for the EPS product. *Id.* The Court fails to see how deconstructing the sentence structure affects the truth of the statement. A plain reading of the text conveys that the FDA warned EPS about the claims it was making regarding a laminitis treatment. Since this is true, the statement is not defamatory.

The second alleged libelous statement is also true. The article states that the FDA asked EPS to change language on its website and social media pages that suggests Desmosphyrine is an FDA-approved drug. (DE 1-3.) EPS argues that this statement is false because EPS never claimed Desmosphyrine was FDA-approved. (DE 11, pp. 12-13.) This, however, is not what the article says. The article states that the FDA asked EPS to change language that *suggests* the drug is FDA-approved. The FDA letter clearly states that any drug intended for the treatment of disease in animals falls under the FD&C Act and must be FDA-approved before entering interstate commerce. Accordingly, when EPS described Desmosphyrine as a treatment for laminitis, it suggested that Desmosphyrine had been approved by the FDA since it would otherwise be illegal to market and sell the product. The statement is at least substantially true and therefore not defamatory.

Similarly, the third statement is true. EPS again claims that the statement that the FDA went on to cite examples where they were concerned "about the portrayal of desmosphyrine as an FDA-approved drug" is false because EPS never claimed Desmosphyrine was FDA-approved.

In the warning letter, the FDA cited numerous examples from EPS's website and social media pages where EPS had described Desmosphyrine as a laminitis treatment. Since any treatment for animal disease must be approved by the FDA, these claims implied that Desmosphyrine was FDA-approved. The article does not state that EPS explicitly claimed Desmosphyrine had been approved by the FDA. Instead, it reports that the language used by the EPS gave the impression the drug was FDA-approved. Thus, this statement by BloodHorse is substantially true.

A comparison of the FDA warning letter and the BloodHorse article shows that BloodHorse did not make any false, defamatory statements. Rather, the article accurately summarizes the content of the FDA warning letter. Since falsity of the article is necessary to plead both trade libel and defamation, EPS has not pleaded sufficient facts that state a claim to relief.

Accordingly, it is hereby **ORDERED** as follows:

1. The defendant's motion to dismiss (DE 7) is **GRANTED**.
2. All claims filed by EPS against the defendant are **DISMISSED WITH PREJUDICE** for failure to state a cause of action.

This 24th day of October, 2023.



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY